# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert W. Gettleman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 7914 | **DATE** | April 15, 2003 |
| **CASE TITLE** | FDIC v Ernst & Young LLP | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Hearing
(5) ☐ Status hearing
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Memorandum opinion and order entered. Defendant's motion to dismiss is granted for lack of standing and this cause is dismissed.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | **Document Number** |
| X | Notices mailed by judge's staff. | | APR 1 8 2003 date docketed | |
| | Notified counsel by telephone. | | | 26 |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | | |
| | Copy to judge/magistrate judge. | 03 APR 17 PM 3:02 | date mailed notice | |
| GDS | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION, in its corporate capacity, | ) ) ) | **DOCKETED** APR 1 8 2003 |
| Plaintiff, | ) ) | |
| v. | ) ) ) | No. 02 C 7914 Judge Robert W. Gettleman |
| ERNST & YOUNG, LLP, | ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Federal Deposit Insurance Corporation (the "FDIC"), in its corporate capacity, initiated the instant suit against defendant accounting firm Ernst and Young ("E&Y"), alleging fraud, gross negligence and accounting malpractice arising from defendant's audit of a failed federal savings bank. E&Y moved to dismiss the complaint, or in the alternative, stay the action pending arbitration. After consideration of extensive briefing and oral argument, the court grants E&Y's motion to dismiss.

## FACTS

E&Y was the independent auditor of Superior Bank FSB ("Superior"), a federal savings bank regulated primarily by the Office of Thrift Supervision ("OTS"). In 1993, Superior launched a subprime lending business, making a substantial number of home mortgage and automobile loans to borrowers whose credit ratings were impaired due to an insufficient credit history, late payments, and/or previous bankruptcy.

In a process known as "securitization," Superior grouped its loans and sold interests in them to investors in the form of securities known as AAA-rated asset-backed securities. Superior retained



a residual interest in the assets used to collateralize the securities it sold to investors. That residual interest was available as a credit enhancement to pay principal and interest on the bonds Superior had issued in the event the collateral for those bonds proved insufficient. Once the bonds were fully paid, any value that remained as a result of the residual interests retained by Superior would belong to Superior.

In its complaint, the FDIC alleges that Superior overvalued the residual interests on its financial statements by failing to properly discount the residual interests to reflect the fact that Superior had no present ability to use those assets for its own benefit. According to the FDIC, from 1995 through 2001, E&Y, as Superior's auditor,

> repeatedly asserted false statements and representations of material facts, including, among other things, that the methodology in valuing the securitization transaction assets was correct, that E&Y's audits were performed in accordance with [generally accepted accounting standards], that Superior's financial statements were correct and in conformity with [generally accepted accounting principles], and that Superior's financial statements presented fairly, in all material respects, the consolidated financial positions of Superior.

The FDIC maintains that E&Y's overvaluation of Superior's assets made Superior appear extremely profitable, when in fact it was losing substantial amounts of money. The FDIC alleges that E&Y was motivated to conceal this overvaluation to facilitate the profitable sale of its consulting arm to Cap Gemini.

On July 25, 2001, Superior was declared insolvent and the FDIC was appointed receiver. The FDIC paid all of the insured deposits, allegedly totaling more than $500 million. In December 2001, the FDIC and OTS entered into a settlement agreement in which they released the owners of Superior from any potential claims in exchange for a promise to pay $460 million to the FDIC. This agreement expressly contemplated that the FDIC would bring claims against E&Y arising out of

Superior's failure, and that the FDIC, as receiver and conservator of Superior, would pay 25% of any net proceeds recovered by any "Agency Party" from the "E&Y claims" to Superior's owners. The agreement defines "Agency Party" to include the FDIC acting in any capacity and OTS, and "E&Y claims" is defined as any claim "arising out of or in connection with Superior." The FDIC signed the agreement in its corporate capacity, as receiver and conservator for Superior, and as manager for the Federal Savings and Loan Insurance Corporation ("FSLIC").

The FDIC, in its corporate capacity, then brought the instant suit for compensatory and punitive damages against E&Y, alleging fraud, gross negligence, and accounting malpractice. In its responsive pleading, E&Y argues that plaintiff failed to state a claim under Illinois law for negligence or gross negligence, and failed to plead fraud with particularity as required under Fed. R. Civ. P. 9(b). More significantly, as a threshold matter, E&Y argues that the FDIC does not have standing to maintain this suit in its corporate capacity and that, if the FDIC does have such standing, it is bound by a mandatory arbitration provision contained in E&Y's audit engagement letter with Superior. Specifically, that provision[1] states:

> Any controversy or claim arising out of or relating to the services covered by this letter or hereafter provided by us to the Bank (including any such matter involving any parents, subsidiary, affiliate, successor in interest, or agent of the Bank or of Ernst & Young LLP) shall be submitted first to voluntary mediation, and if mediation is not successful, then to binding arbitration, in accordance with the dispute resolution procedures set forth in the attachment to [this engagement letter].[2]

---

[1] Plaintiff does not challenge the court's authority to take judicial notice of the arbitration provision.

[2] The dispute resolution provisions provide that the arbitrators "shall have no power to award punitive damages or any other damages not measured by the prevailing party's actual damages, and the parties expressly waive their right to obtain such damages in arbitration or in any other forum."

3

The FDIC responds that it has stated a claim under Illinois law for both negligence and gross negligence, and that its fraud allegations comply with Fed. R. Civ. P. 9(b). With respect to E&Y's standing arguments, the FDIC maintains that Congress explicitly granted it the authority to sue in its corporate capacity for losses that it sustains, and that the FDIC is not bound by the arbitration clause. With this background in mind, the court turns to the merits of the instant motion.

## DISCUSSION

The FDIC, which was established to insure the deposits of all banks and savings associations, operates in multiple capacities, often simultaneously. In its corporate capacity, the FDIC maintains and administers the Bank Insurance Fund and Savings Association Fund. 12 U.S.C. § 1821(a)(4). In the event of liquidation of, or other closing or winding up of the affairs of an insured depository institution, the FDIC in its corporate capacity is the entity that makes payments on insured deposits from the appropriate fund. 12 U.S.C. § 1821(f). After making insured depositors whole, the FDIC in its corporate capacity then steps into the shoes of the depositors and is automatically subrogated to "all rights of the depositor against [the failed institution]." 12 U.S.C. § 1821(g)(1).

As a "body corporate," the FDIC's powers include, but are not limited to, adopting and using a corporate seal, making contracts, appointing officers and employees, acting as receiver, and prescribing by-laws. 12 U.S.C. § 1819. The FDIC also has the power to "sue and be sued, and complain and defend, by and through its own attorneys, in any court of law or equity, State or Federal." Id.

When an institution becomes insolvent, the FDIC is often appointed receiver and assumes responsibility for managing and protecting the failed bank's assets on behalf of its creditors and

4

shareholders. See 12 U.S.C. § 1821(c)(5). As receiver, the FDIC succeeds to "all rights, titles, powers, and privileges of the insured depository institution, and of any stockholder, member, accountholder, depositor, officer, or director of such institution with respect to the institution and the assets of the institution." 12 U.S.C. § 1821(d)(2)(A). After appointment, the FDIC in its receivership capacity has two options: liquidation of assets or a purchase and assumption transaction. See, e.g., FDIC v. Bierman, 2 F.3d 1424, 1438 (7th Cir. 1993) ("When the FDIC in its capacity as receiver is appointed, it steps into the shoes of the bank and then either liquidates the assets and pays off the depositors or engages in a purchase and assumption transaction...."); FDIC v. Wright, 942 F.2d 1089, 1091, n.1 (7th Cir. 1991) (characterizing liquidation and purchase and assumption transaction as two "primary" options available to the FDIC when a bank fails).

In a straight liquidation, the FDIC as receiver sells the assets of the failed bank and pays off depositors from the proceeds, making up any shortfall from the insurance fund. See 12 U.S.C. § 1821 (d)(2)(E). In a purchase and assumption transaction, in contrast, the FDIC as receiver arranges for a financially stable bank to purchase the failed bank and reopen it without interrupting banking operations. The FDIC, in its corporate capacity, then acquires those assets of the failed institution that were unacceptable to the purchasing bank, and tries to collect on those assets and minimize losses to the insurance fund. See 12 U.S.C. § 1823 (d) ("Any conservator, receiver, or liquidator appointed for any insured depository institution in default, including the [FDIC] acting in such capacity, shall be entitled to offer the assets of such depository institutions for sale to the Corporation...."). A purchase and assumption transaction is

generally favored over a straight liquidation because the former is generally more expedient and is less likely to weaken depositor confidence. FDIC v. Wright, 942 F.2d at 1091, n.1.

The parties in the instant case do not dispute that the FDIC is authorized to sue third parties in both its receivership and corporate capacities. Rather, the thrust of the parties' disagreement focuses on whether the FDIC may invoke its corporate capacity in the absence of a purchase and assumption transaction, or an assignment of claims, and thus attempt to circumvent the arbitration agreement between defendant and Superior. For the reasons that follow, the court concludes that the FDIC does not have standing to bring the instant suit in its corporate capacity.

Before addressing the substantive arguments of the parties, the court pauses to address the FDIC's argument that E&Y espoused an inconsistent argument in previous, unrelated litigation, specifically FDIC v. Ernst & Young, 967 F.2d 166 (5th Cir. 1992), and thus is judicially estopped from moving to dismiss the instant case for lack of standing. As noted in New Hampshire v. Maine, 532 U.S. 742, 750 (2001), several factors inform the decision whether to invoke judicial estoppel in a particular case. Specifically, a court should consider whether: (1) a party's later position is "clearly inconsistent" with its earlier position; (2) the party succeeded in persuading a court to adopt its earlier position so that "judicial acceptance of an inconsistent position in a later proceeding would create 'the perception that either the first or second court was misled'"; and (3) the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. Id. at 750-751. For the reasons that follow, the court concludes that none of these criteria is met in the instant case.

The previous Fifth Circuit case relied upon by the FDIC involved the FDIC suing as receiver to recover against E&Y on contract and negligence claims in the wake of Western

Savings Association's failure. At the district court level, E&Y's attorneys sought summary judgment on the ground that the FDIC suing in its receivership capacity could not prove the necessary element of reliance. More specifically, E&Y argued that, under Texas law, the bank owner's knowledge of the bank's true financial condition was necessarily imputed to the bank, as well as the FDIC as receiver, which stands in the shoes of the bank. The trial court agreed, and granted summary judgment to E&Y. See FDIC v. Ernst & Young, 1991 WL 197111 (N.D.Tex. 1991).

On appeal to the Fifth Circuit, E&Y noted in its brief that the FDIC could have "arguably" brought a claim on its own behalf. In affirming the judgment of the district court, the Fifth Circuit explained that the FDIC as receiver could not prove the necessary element of reliance. See FDIC v. Ernst & Young, 967 F.2d 166, 171 (5th Cir. 1992) ("Western cannot claim it should recover from [E&Y] for not being rescued by a third party for something Western was already aware of and chose to ignore. Neither can Western's assignee make the claim."). Although the court noted in dicta that "[e]ither Western's creditors or the FDIC on its own behalf may have a cause of action against [E&Y]," id. at 171-172, the FDIC's hypothetical standing in its corporate capacity was not central to the court's holding. E&Y prevailed on appeal because, as assignee of the bank's claim, the FDIC as receiver could not prove the necessary element of reliance.

With this background in mind, the court is not persuaded that E&Y's reference to the FDIC's hypothetical standing in the Fifth Circuit case is properly characterized as a "position" in prior litigation that is inconsistent with its position in the instant case. Moreover, the issue of whether the FDIC had standing to bring suit in its corporate capacity in the previous case was

7

clearly collateral to the Fifth Circuit's holding, such that a contrary conclusion in this case would hardly create "the perception that either the first or second court was misled." Accordingly, the court concludes that E&Y is not judicially estopped from arguing that the FDIC lacks standing in its corporate capacity to maintain the instant suit, and turns now to the merits.

Courts have routinely recognized the FDIC's ability, as receiver, to bring claims the failed institution or depositors might have against third parties. In Popkin v. Jacoby (In re Sunrise Securities Litigation), 916 F.2d 874 (3d Cir. 1990), for example, the Third Circuit affirmed the dismissal of claims brought by uninsured depositors against the auditor of a failed savings and loan. According to the Popkin court:

> The injury – loss of principal or interest – is sustained by all depositors and is incidental to and dependent on injury to the institution. Therefore, the institution or its receiver is the proper party to sue for the benefit of all depositors and creditors. The alternative, permitting depositors to bring individual actions for such injuries, would invariably impair the rights of other general creditors and claimants with superior interests.

Id. at 886-887. See also Hamid v. Price Waterhouse, 51 F.3d 1411, 1419 (9th Cir. 1995), cert. denied, 516 U.S. 1047 (1996) ("[W]rongdoing... that adversely affects all depositors creates a liability which is an asset of the bank, and only the bank or its receiver may sue for its recovery.").

This recognition results, presumably in part, from an expectation that proceeds from such litigation will be distributed equitably among depositors and other claimants, according to their relative priorities. In 1993, Congress adopted a detailed federal depositor preference scheme that contemplates a liquidation advantage for depositors over all other claimants, other than secured creditors and administrative expenses of receivers. See Omnibus Budget Reconciliation Act of 1993, Pub. L. 103-66, 107 Stat. 312. According to this scheme, after secured creditors are paid,

8

the following order of priority applies: administrative expenses of the receiver; deposit liability of the institution; any other general or senior liability of the institution; any obligation subordinated to depositors or general creditors; and any obligations to shareholders. 12 U.S.C. § 1821 (d)(11)(A).

The FDIC may also sue in its corporate capacity on claims arising from the ordinary business of the FDIC, such as employment and real estate matters, as well as on causes of action acquired from a failed institution through a purchase and assumption transaction, described above, or other assignment. See, e.g., 12 U.S.C. § 1821(k) (empowering FDIC, in its corporate capacity, to prosecute claims of gross negligence or intentional misconduct against individual directors and officers, when such claims have been "purchased from, assigned by, or otherwise conveyed by" the receiver, conservator or depository institution). The latter type of corporate capacity suit, which often arises from a purchase and assumption transaction, has been recognized by the Seventh Circuit. See, e.g., FDIC v. Bierman, 2 F.3d at 1438; FDIC v. Braemoor Assoc., 686 F.2d 550, 552 (7th Cir. 1982).

The kind of corporate capacity suit contemplated by plaintiff in the instant case, however, is unprecedented. Aside from citing one case in the Southern District of New York involving the Resolution Trust Corporation (RTC), Resolution Trust Corporation v. Coopers & Lybrand, 915 F. Supp. 584 (S.D.N.Y. 1996), which is inapposite,[3] plaintiff has not identified a single case in

---

[3] In Coopers & Lybrand, the RTC sued the auditor of a failed institution both in its receivership and corporate capacities. The defendant argued that the RTC did not have standing to assert a negligence claim on it own behalf, but the district court disagreed. The court concluded that Congress implicitly allowed the RTC's predecessor, the Federal Savings and Loan Insurance Corporation, and thus the RTC, to bring such a claim under state common law on three grounds: (1) express statutory language granting the FSLIC the right to "sue and be sued;"
(continued...)

which the FDIC in its corporate capacity has sued a third party on behalf of the insurance fund, other than as assignee. To allow such a suit to go forward would impair the statutory priority scheme outlined above, which provides that, after payment of insured depositors claims, the FDIC steps into the shoes of the depositors and is subrogated to "all rights of the depositor against the failed institution...." 12 U.S.C. § 1821(g). As subrogee of the insured depositors, the FDIC in its corporate capacity joins the uninsured depositors as first in line to be paid, after secured claims and administrative expenses. 12 U.S.C. § § 1821 (d)(11)(A). Permitting the FDIC to proceed with the instant suit in its corporate capacity would, as E&Y argues, "enable the FDIC to bypass the statutory priorities at will, taking whatever it could recover for itself, outside of the receivership process, and leaving nothing for creditors with a right to equal or greater priority."

Apparently recognizing that maintenance of the instant suit would threaten to undermine the rights of other depositors and creditors, the FDIC asserts, "The FDIC is bringing this case to, among other things, recover the loss to the insurance fund. Assuming the successful conclusion of this case, the FDIC will properly pay the recovery in this matter according to the required statutory priority scheme." Such voluntary assurances, in the absence of a statutory directive to

---

[3](...continued)
(2) Congress' intent that the FSLIC "act in a manner similar to a private corporation;" and (3) "common sense." Id. at 590-591.

Notwithstanding the arguable similarities between Coopers & Lybrand and the instant case, the court respectfully disagrees with the analysis employed in Coopers & Lybrand. Moreover, as E&Y notes, the receivership at issue in Coopers & Lybrand commenced in 1989, and thus that court did not have occasion to consider the depositor preference scheme, which applies only to receiverships that commenced after August 10, 1993. See Omnibus Budget Reconciliation Act of 1993, Pub. L. 103-66, 107 Stat. 312.

10

the same effect, do not assuage the court's concerns about the disruption to the priority scheme described herein, however.

In the absence of any statutory authority or caselaw that contemplates the FDIC suing in its corporate capacity to recover on behalf of the fund that it manages, the court concludes that plaintiff does not have standing to maintain the instant suit.[4] The remaining issue, then, which was argued extensively by both parties in their briefs as well as during oral argument, is whether the FDIC properly repudiated the arbitration provision contained in Superior's engagement letter with E&Y.

At the time of the filing of the instant suit, the FDIC as receiver purportedly repudiated the arbitration provision in Superior's engagement letter with E&Y pursuant to 12 U.S.C. § 1821(e), which provides authority for the receiver of a failed bank to repudiate "any contract or lease." Accordingly, in its response brief and at oral argument, the FDIC argued that, "[e]ven if the FDIC did file this case in its receivership capacity, it would not be bound by the arbitration provisions because those provisions have been properly repudiated." The court disagrees. The plain text of § 1821(e) provides for the repudiation of "a contract," rather than a provision thereof. The statute does not permit the FDIC to repudiate only those provisions of a contract with which it is dissatisfied.

---

[4]Nor will the court imply a cause of action in the instant case. See O'Melveny & Myers v. FDIC, 512 U.S. 79, 88 (1994) (noting that "there is no federal policy that the [insurance fund the FDIC manages] should always win," and thus concluding that it did not have authority to create "new, 'federal-common-law' causes of action to enrich the fund.").

Because the court's conclusion compels the dismissal of the FDIC's claims, the court need not reach E&Y's arguments regarding the adequacy of plaintiff's factual allegations under Fed. R. Civ. P. 12(b)(6) and 9(b).

## CONCLUSION

For the reasons stated herein, defendant's motion to dismiss is granted for lack of standing.

**ENTER:** **April 15, 2003**

**Robert W. Gettleman**
**United States District Judge**